We're going to go on now to Case No. 5, please, 22-2615, United States v. Nathaniel Jacobs, Sr. Hello, Mr. Mayor. Good afternoon. May it please the Court, Stephen Mayer on behalf of Nathaniel Jacobs, Sr. The District Court committed two prejudicial errors in this case, either one of which requires reversal. In our briefs, we raise a Fourth Amendment and a Sixth Amendment challenge, and I'm happy to answer questions on the Fourth Amendment challenge, but I'd like to focus today on the Sixth Amendment Confrontation Clause violation. Okay, well, then I will start you off. Even if we assume that the District Court erred in not allowing the defense to question Ms. Barton about the possibility that she might hope to get lenient treatment with respect to state charges in exchange for her testimony against Mr. Jacobs, why wasn't any such error harmless? Because I have had a difficult time trying to discern how the government's case against him would have been meaningfully different without her testimony. And the government certainly presented other evidence on the charges, and it recounted that evidence in its brief, and we don't deny that. But given the issues that were presented at trial with identification and possession, and given Ms. Barton's overall importance to the case and her relationship to Mr. Jacobs, I think the opportunity to adequately cross-examine her on her potential bias was prejudicial and could not be harmless because of her relationship. And because of the fact that the government was able to present her free from the threat of any effective cross-examination on her potential bias or incentive to testify for the government. Can you spell out a little bit more about how Ms. Barton, Ms. Barton, you said, you know, that she generally was important to the case? I had a hard time seeing that. I thought it doesn't seem that important. I mean, she's definitely, they called her, so she's definitely relevant. She had something to offer. But in terms of importance, that's where I had a harder time. I think her importance comes from her relationship with Mr. Jacobs and the fact that she was the only other person that lived in the residence that they shared together. And so when the law enforcement is executing the search warrant and they find narcotics in the residence, there are issues of identification and possession at trial. She's the only other one that it could have belonged to. And the government, much of the government's case was tied together through Barton's testimony. She was the only witness whose testimony affected every charge defense, and she was kind of the missing piece to the government's case because of her relationship and because of her ability to, her presentation to the jury as a law-abiding ex-girlfriend who disapproved of the activities that they, that Mr. Jacobs allegedly engaged in in their shared home. On the issue of bias, the bias that Ms. Barton would have shown would have been toward Mr. Jacobs if that information had been presented? Well, our position is that he should have been able to cross-examine her on her potential bias for the government based on her separate state court case for nearly identical violations herself. Is there any information that you all had at the time that there was a suggestion of bias? There's nothing in the record, and the government makes that point in its response. But because we weren't able to flesh that out at trial, either before the jury, voir dire, anything, there was, we are left with nothing on appeal because the speculation issue is, was not properly or adequately vetted at trial. Was it requested during discovery? It was requested, so the issue was, it came up pre-trial in response to the government's motion in limine. And then during Ms. Barton's testimony... And during the motion in limine, let's stop there, in the pre-trial proceedings, did the judge give an opportunity to request or to submit a response on this issue? I'm not sure if there was any written response, either solicited, I don't believe there was one filed. And I think the district court basically took that issue under advisement. And didn't the district judge, though, give defense two weeks or so to respond and to provide support to being able to ask Ms. Barton these questions that you wanted to ask? And so tuck the issue under advisement to give the defense an opportunity to respond? There very well could have, and I presume that that's the case. I will say whether or not we filed a written response in the district court, I certainly think trial counsel made clear their intent on multiple occasions. I think there were no fewer than four occasions when... Was that intent for impeachment or was it for biased purpose? It was more generally the Sixth Amendment, which in our opinion should encompass the biased testimony we were requesting on appeal. And there was never... Trial counsel never explicitly used the words bias, incentive to testify, and motive to testify. But he certainly made clear his intent to cross-examine her under the Sixth Amendment, which this court has held quintessentially includes bias-related testimony. And the district court denied him that opportunity. What was the purpose, I guess, the purpose for wanting to introduce this evidence that he presented at trial on the trial record? The purpose, as I mentioned earlier, the purpose would have gone to the issues of identification and possession where the jury... Ms. Barton was presented to the jury. She was this law-abiding ex-girlfriend. And the jury had no idea that there were other issues that may have presented an issue for her credibility as they assessed her testimony. It's difficult for me to see how... I was trying to think in preparing for this. What are four or five examples of questions that you would have wanted to ask Ms. Barton that you weren't able to ask? Give me four or five. Were you arrested for possessing 117 grams of meth in a firearm? And she says yes. Have you had any interaction with the government in this case as it relates to your state court case? No. We would probably be left with that. Right, and so what the difficulty with me is at some point, if we were to just tease this out a little bit, she's going to get to the point where she invokes her Fifth Amendment rights. Probably another, maybe one more question in that way. And then you're stuck with what's... what makes your position difficult for me is that you're stuck with what turned up in the search. And unfortunately for Mr. Jacobs, there's video, some type of video evidence that shows him handling the gun or guns in his home and all that. And I think, what's the best case scenario? Maybe that the girlfriend's in on the drug dealing with him, but that doesn't help him. In other words, joint possession's not a good set of facts for him. I mean, he's equally convicted. So I just don't know where it all goes if you go maybe three, four, five steps down the line. And certainly, Your Honor, the firearm possession, there's other evidence. For example, the... Oh, they found... there's all kinds of drug dealing, paraphernalia, there's meth in the skull cans and all that. Correct, and as I read the record, the surveillance pictures and video that Your Honor referenced, that was more for the firearms offenses. I don't think, as I recall, there was pictures and video of Mr. Jacobs weighing and packaging narcotics for sale. So I think... No, but when they... the problem for him, the real challenge he has is once they see that guns have been recovered and he's handling guns on video, he then is painted as an armed drug dealer vis-a-vis the jury. That makes it very, very difficult for him on these charges. Absolutely. And added to that, unfortunately, is the recorded jailhouse conversations in which he's pressuring her to marry him so she can't testify against him. I'm... I really don't think she helps you one bit. I think she could have harmed you. And certainly the recordings speak for themselves, Your Honor, and I think the bigger issue here is the narcotics. Ms. Barton did testify at trial that she acknowledged that they had planned to marry before Mr. Jacobs shot himself, and she testified about her general perception of the calls, and they speak for themselves. But I think the bigger issue here relates to the narcotics. And because she was the one who shared the residence with him, because she had these issues that the jury never heard about, and because of her overall importance to the case in every charge defense, I think that the error, particularly with the narcotics, could not have been harmless. And I see my time is up. You'll get your rebuttal. You'll get it. Thank you very much. Thank you. Hello, Mr. Wood. Hello. Your Honor, may it please the Court? Mr. Mayor? I'll start with a response to one of Your Honor's questions about the two weeks' time to respond to Judge Young's taking the matter under advisement. And I don't think there was a response in the record. Obviously, Mr. Warren gave a lot of thoughts on the issue at trial, but I don't think there was a written response. I may be wrong about that, but I don't think so. But the point is, even as he was given time to substantiate that, the record – it's not just what the record lacks about its intent to substantiate a theory of bias. It's that Mr. Warren said, now, I'm not going to be asking about any charges. I'm not going to be asking about any conditions of the state case, which essentially, at least conceptually, precludes the idea that you'd be asking about cooperation or anything to do with leniency in the charges if you're not going to ask about the charges at all. And on that, I would say that dovetails the purpose of the inquiry below to suggest that she was involved. And I understand the weakness of that defense, but that dovetails with how they describe Ms. Barton's importance even now, which is to suggest – I don't remember the exact words, but her importance was she lived with him. She's the only other person who possibly could have been involved. But again, that couldn't overcome all the other evidence suggesting – confirming, really, that he was the drug dealer here, stemming all the way from his confessions through video evidence and everything else. In view of our Martin decision, should the district court at least have allowed a thorough voir dire regarding Ms. Barton's arrest on the state charges? I'll say that – I'll say this on that, Your Honor. If there had been any request whatsoever to probe bias, cooperation, partiality, or motive to lie, maybe. But those things were not only not mentioned, but they were precluded by the statement, I will not be asking her about her charges or the conditions of the case. So if he tells the judge if I – and voir dire didn't come up, but if he tells the judge I'm not going to be asking about these things, then what's the point of the voir dire, at least in Martin terms? I don't see it. And again, procedurally, in a different case, yeah. I don't know about a rule that an offer of proof is necessarily inferior to a voir dire, but Martin definitely suggests the value of that for appellate review. But if you take it out of Rule 609, that line of questioning, is that not impeachment by contradiction? It could be impeachment by contradiction. There are a couple of questions there. One, what's the material issue that's being – that the contradiction goes to here? He said narcotics activity. That's what we just heard from Mr. Martin. Right. Exactly. And so – but his idea there was that she was involved in narcotics activity and that she feigned naivete. That was the contradiction he was looking for. She said there's been nothing to suggest that Ms. Barton, other than living there, had anything to do with this. She seemed to suggest discomfort with drugs. I would like to contradict the notion that she was uncomfortable with drugs. That is not precluded by 608 and 609, but it would have had such limited force. And so the voir dire would have looked like – I think – I tried to describe what that would look like without pantomiming. With those other charges pending, she's going to pretty quickly invoke take the fifth. Yeah, so that contradiction essentially is of limited force and the questioning would basically go nowhere. And I don't think there's any rule that requires an invocation when the invocation is obviously going to occur right at the outset of the questioning. So, Your Honor, you're correct. That's not 608 land per se, but what the value of that voir dire is, I really – I can't see. Really, genuinely, I tried – the standard review section here is to try to give the benefit of the doubt to as many possible meanings of this cross. And I don't think there could have been questions that would have helped them much, honestly. And other than that, unless there are additional questions. Can I just confirm one thing? I know Mr. Mayer said he wanted to spend his time on the Sixth Amendment. I totally understand and respect that. I was thrown off a little bit and I just want to confirm. There was never a Fourth Amendment motion to suppress filed. In other words, there's not one that was filed that was a little bit late and therefore untimely. There was nothing ever filed. Right. And so the waiver – the primary waiver arguments for us, the first one is if they had filed an untimely one at trial or just before, under the Viscar Milan description of the standard of review, the district judge would not have abused his discretion to say this is untimely. So it's the standard of review sort of imagines an untimely motion and then puts an abusive discretion standard on top of that. And that couldn't have been an abusive discretion here because Mr. Warren talked about thinking through a suppression motion and deciding against it. Whether or not that's exactly – Well, this is on the point where he said something like I've got to adhere to my professional obligations to the court. I can't advance a frivolous argument. Right. And whether or not that's exactly the argument that they raise here, which I'm not suggesting it's a frivolous argument at all, but whether or not it's exactly the same, this isn't a case where affirmative waiver requires saying I'm not making a specific argument and then try to preserve that specific argument. The Rule 12 calculus allows for affirmative waiver by different means, which is this Viscar Milan review standard. So it's waived in that sense too. All right. Is there anything else? Thank you, Your Honor. Well, there is something else. And that is Mr. Mayor has some time. Oh, yeah. Great. Okay. Thank you, Your Honor. Just briefly on the Fourth Amendment issue, we, of course, did not raise that in the district court, but in our opening brief we believe we established good cause for our failure to do so. So we would rely on our brief for that point. I would like to go back to Your Honor's questions about what we would have asked Ms. Barton. And certainly we would have asked her if she had been arrested and whether the government had offered her any sort of cooperation or agreement. But just because she had said no on that, I don't think it would have been unreasonable for the jury to make some sort of negative inference based on that. I think what we heard in her presentation to the jury, I don't think it's out of the question that they could have disbelieved what she had said. And Your Honor also mentioned her Fifth Amendment argument, and I would like to briefly touch on that because the government's position, in effect, makes Ms. Barton's Fifth Amendment problem Jacob's problem. That's their problem as the party offering her to the jury. Her Fifth Amendment right, perfectly valid, and I presume she would have invoked at some point, that, in effect, is the district court is allowing her Fifth Amendment right to infringe on Mr. Jacob's Sixth Amendment right. And given her importance to the case, and if you read the government's brief through the statement of facts, it's kind of told through Ms. Barton's eyes. We, of course, made her the central figure on appeal, but much of their statement of the case is told through Ms. Barton. So your point is that you would have liked to be in front of the jury in closing argument saying, look, this is just a bunch of nonsense that she's uncomfortable with guns and drugs. You heard her admit that she has a felony methamphetamine charge pending, and that would have positioned you to argue that all the drugs, all the guns were hers, not his. Because you can't admit joint possession, right? You admit the offense. Correct. And certainly had she denied some sort of cooperation agreement, that would have been our argument. Had she agreed or had there been some sort of cooperation agreement, then it would have opened up something else. But absolutely on that point, she's the only other person that the sort of evidence, particularly the narcotics, could have belonged to. And given her arrest for very similar offenses, it's certainly reasonable that the jurors could make some sort of inference based on the conduct for which she was arrested. And then the final point I'd like to make is on whether or not this issue was preserved. And I will just say that certainly trial counsel's objection was not a model of clarity and did not use the magic words that we would have used on appeal. But that's not what's required on appeal or in the district court. Sorry. And he certainly invoked the Sixth Amendment. And I think bias in the sort of testimony we're trying to raise with Miss Barton is the natural and kind of obvious inference from the objection that trial counsel did make. So with those points, we would respectfully request the court reverse and remand for a new trial. Thank you. All right. Well, Mr. Mayor, hello. Did you run away? I want to thank you. You can't run away while we're thanking you. We want to thank you. You were appointed in this case and you really did a very fine job for your client. And this court is very grateful to you for taking this on pro bono and appreciative of the time and effort you have put forth. So thank you very much, Mr. Mayor. Thank you. And Mr. Wood, wherever you may be, we want to thank you as well for the fine presentation on behalf of the government that you always bring to us. So thank you both very, very much. And the case will be taken under advisement.